72 U.S. 170 (____)
5 Wall. 170
THE DASHING WAVE.
Supreme Court of United States.

*172 Mr. Ashton, Assistant Attorney-General, for the United States.
Mr. Marvin and Mr. Evarts, contra; Mr. Evarts for Lizardi & Co..
*176 The CHIEF JUSTICE delivered the opinion of the court.
Two decrees were rendered in the District Court for the Eastern District of Louisiana, the first, directing restitution of the vessel and cargo; the second, refusing damages, and ordering payment of costs and charges by the claimants. The United States appealed from the first; the claimants took an appeal from the second.
The proofs show that the Dashing Wave was a neutral vessel, bound from Liverpool to Matamoras, with a cargo of general merchandise and coin, no part of which was contraband.
It is clear, therefore, that the decree of restitution must be affirmed.
The only question which requires much consideration relates to the rightfulness of capture. And this question resolves itself into two:
1. Was there anything in the position of the Dashing Wave, at the time of capture, which warranted the opinion of the captors that she was engaged in breaking the blockade? and 
2. Was there anything in the papers on board the brig, relating to the cargo, which justified the seizure?
It is claimed for the captors that she was taken in Texan waters, lying convenient to the blockaded coast. The preparatory evidence left her position in much uncertainty, but the testimony taken under the order for further proof, in connection with the chart upon which her position is marked by one of the witnesses, establishes it beyond reasonable doubt. She was anchored north of the line between the *177 Mexican and Texan waters, with as easy access to the land on the rebel as on the Mexican side.
We think it was the plain duty of a neutral claiming to be engaged in trade with Matamoras, under circumstances which warranted close observation by the blockading squadron, to keep his vessel, while discharging or receiving cargo, so clearly on the neutral side of the boundary line as to repel, so far as position could repel, all imputation of intent to break the blockade. He had no right to take, voluntarily, a position in the immediate presence of the blockading fleet, from which merchandise might be so easily introduced into the blockaded region.
We do not say that neglect of duty, in this respect, on the part of the brig, especially in the absence of positive evidence that the neglect was wilful, calls for condemnation; but we cannot doubt that under the circumstances described, capturing and sending in for adjudication was fully warranted.
The other question relates wholly to the papers concerning the shipment of coin. There is no evidence which affects with culpability any other part of the cargo.
The coin is claimed by Lizardi & Co., neutral merchants of Liverpool; but the proof shows that one H.N. Caldwell was the real owner of the larger part of it. A letter, dated August 17th, 1863, and addressed by Caldwell to Lizardi & Co., states his intention, in view of "the uncertain state of our political affairs," to take gold to purchase cotton, instead of taking goods to Mexico, if he can arrange for an advance of £5000, making, with certain credits in his favor with Lizardi & Co., and £3000 which he had in bank, a total of £12,000, with which to operate.
In the same letter he further proposed that the whole amount should be shipped to J. Roman, of Matamoras, as the property of Lizardi & Co. The next day Lizardi & Co. acknowledged the receipt from Caldwell of a check for the £3000 in bank, and agreed to his proposals. Three days later Lizardi & Co. addressed a letter to Roman, advising him of the arrangement with Caldwell, and distinguishing expressly the £5000 advanced by them from "the other *178 £7000 of the said gentleman." These letters were found on board the brig.
Caldwell was a passenger on the brig, but was allowed to leave before any question of his character was made. What was that character in fact? Was he a rebel enemy or a neutral?
The tenor of his letter to Lizardi & Co., his proposal that the specie should be shipped as their property, when seven-twelfths of it belonged to himself; and especially the circumstance that he has never made claim in this suit to any part of it, except through Lizardi & Co., indicates that he was not a neutral, but an enemy.
On the other hand, there is no positive proof of his enemy character, though further proof was allowed to the captors.
This evidence, in our judgment, does not warrant condemnation of the specie, but it does, as we think, justify the capture.
We shall therefore affirm the decree of the District Court, restoring the vessel and cargo, but direct that costs and expenses consequent upon the capture, be ratably apportioned between the brig and the shipment of coin, and that the residue of the cargo be exempted from contribution.
DECREE AND DIRECTIONS ACCORDINGLY.

NOTE.
At the same time with the preceding appeal and cross-appeal, and by the same counsel, were argued two cases; one an appeal and cross-appeal, as the preceding, from the District Court of the United States for the Eastern District of Louisiana; the other, an appeal from the same court.
The first case was that of